## VAUGHAN, Adm'x, v. BURT.

No. 19197. Opinion Filed Jan. 22, 1929.

Rehearing Denied June 25, 1929.

A. Plack Carr, for plaintiff in error.

Hamilton, Gross & Howard, for defendant in error.

HALL, C. This is an action by Rosa B. Vaughan, as administratrix of the estate of W. W. Vaughan, deceased, against H. G. Burt and H. N. Cook. Before the trial, the action was dismissed as to Cook, and he will not be referred to further in this opinion. The action was for the recovery of specific sums of money alleged to be owing and due the estate of Vaughan, and for an accounting.

First, it is alleged in the petition that the defendant is indebted to plaintiff in the sum of $10,000, the indebtedness representing an attorney's fee which defendant collected for the use and benefit of plaintiff's deceased husband; that the collection of this sum of money grew out of and resulted from certain legal services which the deceased, in his lifetime, rendered in connection with the guardianship of one George Bigheart. Second, the petition also alleges that a like sum or an equal sum was collected by defendant for the use and benefit of plaintiff's deceased husband by reason of certain legal services which he, the deceased, in his lifetime, rendered in the matter of the guardianship of one Raymond Redcorn. The third count is for a general accounting. The answer was a qualified general denial, and a plea of payment. In this connection, the pertinent part of the answer of defendant is as follows:

"Defendant, H. G. Burt, says that a few days prior to the death of the said W. W. Vaughan, one George Bigheart delivered to the said deceased, W. W. Vaughan, his certain annuity check, and that as a result of the delivering of same to the said defendant, H. G. Burt, and as a result of certain money paid to the said George Bigheart, at the same time and place by the said defendant, H. G. Burt, and there was left in the hands of said defendant, H. G. Burt, as proceeds of said annuity check, the sum of $10,000; that of said amount, $5,000 was due and owing to the said deceased, W. W. Vaughan; that subsequent to the date of delivery of said amount of money to the defendant, H. G. Burt, that the said defendant, H. G. Burt, paid to the said W. W. Vaughan, $3,250 of said amount, thereby leaving owing to the said W. W. Vaughan, the sum of $1,750. * * *"

The court rendered judgment in comformity with that portion of the pleadings; that is, judgment for the plaintiff in the sum of $1,750.

The essential facts in the case are as follows: W. W. Vaughan, of whom plaintiff is administratrix, was, in his lifetime, a lawyer, and for several years prior to his death he was engaged in the practice of his profession in the city of Pawhuska, Okla. He died on about June 29, 1923. For a considerable time prior to his death, he was the personal attorney for the defendant, H. G. Burt, and H. G. Burt & Company. The petition alleges that "the relations of a business and professional nature existing between the defendant and the decedent, were of an extremely confidential and intimate nature." The testimony and circumstances tended to prove that allegation. The testimony shows that for a considerable

time before Vaughan's death, he and defendant were constantly together; and that the defendant directed or referred prospective clients to Vaughan; that among these, which he either directed to Vaughan or promoted in conjunction with him, were two wealthy Osage Indians, one George Bigheart and one Raymond Redcorn, who were under guardianships as incompetents. Vaughan succeeded, in legal actions, in getting these Indians restored to competency. For these services, or apparently for these services, the defendant, Burt, collected $10,000 from George Bigheart just a few days before Bigheart and Vaughan died. It appears that Vaughan died or was killed two or three days after the death of Bigheart. This sum of money was paid the defendant in the form of a United States Government annuity check in the sum of $15,341.29, issued to George Bigheart, indorsed by Bigheart and delivered to defendant. Defendant cashed this check and paid Bigheart, who was then in his last sickness, the sum of $5,000. It is this transaction in which defendant admits in his answer that $5,000 of the amount collected from Bigheart was the property and funds of Vaughan.

Regarding the Redcorn case, and the collection of an attorney's fee in connection therewith, there is no admission in the pleadings, and the evidence tends to show that all matters connected with this case, except the evidence as to the legal services rendered, were wholly transacted between Redcorn and defendant.

Redcorn testified that he was under guardianship, and that it was suggested to him by the defendant that they would talk the matter over with Mr. Vaughan, and would have him look after his business; that he (Redcorn) thought they went and talked to Vaughan at that time, as he was trying to get his guardianship terminated, and that he succeeded in that effort; that he executed a note to the defendant for $10,000, and later paid $400 on the note for the benefit of Mrs. Vaughan. The defendant had told Redcorn to turn over that amount for Mrs. Vaughan's benefit. In the course of his testimony, this witness said:

"A. I signed it because Mr. Burt said he was going to get me out of debt, and I thought part of that would go to Mr. Vaughan as part of his attorney fees. A. Well, at that time, we—he wanted me to sign a note so he could get me out of debt, and that was going to get me loose from under guardianship, and he said I could pay him every payment—turn him my check. Q.

Well, did Mr. Burt ever tell you what he was going to pay Mr. Vaughan for the services rendered? A. No, I thought that would be paid out of that $10,000 but he didn't say anything about it."

Redcorn seemed to understand that defendant, Burt, had full authority in the premises. Sometime thereafter, and after the death of Vaughan, Redcorn paid $400 on this $10,000 note. As stated above, and according to the testimony of defendant's witness, Mr. Charles B. Wilson, a surviving law partner of the deceased, one-third of this amount, or $133.33, was turned over to him by defendant, and that he divided this $133.33 between himself and Mrs. Vaughan, the plaintiff. In this instance, it appears that the defendant retained two-thirds of the amount collected from Redcorn.

Defendant offered no testimony whatsoever in support of his plea of payment of the sum of $3,250, or any other sum, concerning the transaction or matter in which the plea of payment is involved. The defendant attempted to show by plaintiff, on cross-examination, that she at one time was willing to make a settlement with defendant for the sum of $1,750, the amount which defendant conceded he owed the deceased. In this connection, it may be said that there was no settlement agreement pleaded or proved. The plaintiff indicated only that she might settle or compromise the matter, were it not for her liability for her attorney's fee in connection with the case.

The defendant next attempted to show, on cross-examination of this witness, that there existed an account rendered in the handwriting of the deceased showing the balance due in this case to be only $1,750. The effort wholly failed or miscarried, as Mrs. Vaughan testified that the memorandum under consideration was made on the back of a blank check, and contained no names by which the notations could be identified; and that the memorandum had already been examined fully by Mr. Burt and his attorneys, and they "knew all about it"; that she thought the memorandum was in Tulsa among her other papers, and that she could produce it if necessary.

This witness further testified, which is undisputed, that either under a demand to inspect an account book, or voluntarily, she delivered her deceased husband's books to the attorneys for defendant. The books were not at the trial, and the defendants did not offer any secondary evidence of their contents, and did not offer any second-

ary evidence of the contents of the un-identified memorandum.

We shall not disturb the judgment of the trial court in that part of the case which relates to the Raymond Redcorn matter, the $10,000 note in connection therewith, and a small payment thereon, and the one-third distribution thereof to plaintiff and the surviving law partner of the deceased. We may not altogether agree with the findings of fact of the trial court on this particular phase of the case, but, for good and sufficient reasons, as to that transaction, we prefer to leave the parties where we found them.

As to the other transaction, the George Bigheart matter, involving defendant's plea of payment of the sum of $3,250, the judgment should be reversed, or modified to embrace and include the full amount of $5,000, together with interest from its inception by defendant.

A plea of payment is an affirmative defense, and the court is not at liberty to sustain it without some substantial evidence in support of same. That proposition is too elementary to require the citation of authorities in support thereof. The defendant's plea of payment to the deceased of the sum of $3,250, or any other sum as a part of the $5,000 received from George Bigheart, is not sustained by any evidence, much less by the weight of the evidence.

Therefore, the judgment of the trial court involving this particular phase of the case is hereby reversed, with directions to enter, in lieu thereof, judgment for plaintiff and against the defendant, H. G. Burt, for the sum of $5,000, with interest thereon from the 30th day of June, 1923, and for statutory costs.

BENNETT, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Executors and Administrators," 24 C. J. §2183, p. 865, n. 90.